# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**TAMMIE M. CHAPPEL,**

**-vs-**  Case No. 8:08-cv-1138-Orl-DAB

**COMMISSIONER OF SOCIAL SECURITY,**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application for social security disability benefits. For the reasons set forth herein, the decision of the Commissioner is **AFFIRMED.**

### PROCEDURAL HISTORY

By prior application, Plaintiff received disability insurance benefits from 1994 until the agency ceased benefits by reconsideration determination dated February 9, 1999 (R. 22). That determination reflected a conclusion that Plaintiff had undergone improvement and was no longer disabled as of July 1, 1997 (R. 6, 233). Plaintiff appealed the cessation of benefits determination, but failed to appear at the administrative hearing (or provide good cause for that failure) and her appeal was eventually dismissed. *Id.* The Commissioner has found that the reconsideration determination is therefore final and operates as *res judicata* for the time period it covered. *Id.*

Plaintiff filed the instant application for disability insurance benefits on June 11, 2003 (R. 43). The state agency denied Plaintiff's application initially and upon reconsideration (R. 38, 40), and Plaintiff requested and received a hearing before an Administrative Law Judge ("the ALJ") (R. 238).

In an unfavorable written determination, the ALJ found that Plaintiff was capable of performing her past relevant work as a bank teller and therefore denied her application (R. 22-29).

Plaintiff requested a review by the Appeals Council, which was granted (R. 232); however, the Appeals Council affirmed the ALJ's decision that Plaintiff was not disabled for the period of February 10, 1999 through her date last insured of September 30, 2002. Further, after giving notice of its intentions and an opportunity to be heard, the Appeals Council applied that decision retroactively to July 1, 1997 (R. 233, 6-8). This is the final decision of the Commissioner.

Plaintiff brings the instant action for review and has consented to the jurisdiction of the United States Magistrate Judge. The matter has been fully briefed and is now ripe for resolution.

### *NATURE OF CLAIMED DISABILITY*

Plaintiff claims that she has been disabled since August 8, 1993, due to "cntl nerv disfunction related to diseminated innervascular coagulaton."[sic] (R. 72). Specifically, Plaintiff alleged that she suffered from "low back pain, numbness & weakness in her hands, disseminated intervascular coagulation after ovarian cancer surgery which caused neurologic damage, numbness & weakness in legs and arthritis." (R. 36).

*Summary of Evidence Before the ALJ*

Plaintiff was born in 1972 (R. 43), and was therefore considered a "younger individual" prior to the expiration of her insured status on September 30, 2002 (R. 23). She was a high school graduate (R. 243), with prior work experience as a restaurant hostess, cashier, and bank teller (R. 63).

The medical evidence with respect to the applicable period of time is sparse, and set forth in detail in the ALJ's decision. By way of summary, the historical medical evidence reflects that Plaintiff had been diagnosed and treated for ovarian cancer in 1993 and had a complicated post-

operative course, which included an episode of disseminated intravascular coagulation (R. 24, 90, 171). Plaintiff was treated for residual weakness in her right quadriceps and extremity (R. 162, 166). As of June 1995, Plaintiff's treating oncologist noted that she was doing "extremely well" with "no signs or symptoms of recurrent disease" and it was noted that her neurological weakness "continue[d] to improve." (R. 152).

The records post-July 1997 and prior to the date last insured (September 30, 2002) are few. Plaintiff gave birth via C-section on March 21, 2000, without complications, and was discharged from the hospital in good condition two days later (R. 117-121). Over two years later, on September 4, 2002, Plaintiff presented to her gynecologist, complaining of spotting and cramping (R. 148). Examination was "very benign" with no evidence of bleeding, and ultrasound evaluation was also benign (R. 147). No other records showing medical treatment during the pertinent time period are in evidence.

On October 3, 2002, shortly after the date last insured, Plaintiff presented to her neurologist "after many years." (R. 144). Examination revealed mild slowness of toe wiggling on the right and mild weakness of hip flexure and quadriceps function on the right. There was also a question of mild hamstring weakness on the right. Her reflexes were absent on the right knee and increased on the right ankle. There was decreased pinprick in the lower extremities bilaterally, more obvious on the right than the left and more obvious in the left thigh and buttock area than distally. The right leg showed decreased pinprick throughout including the perianal dermatones. (R. 144). Gait revealed a mild clumsiness in the right leg. Dr. Traviesa diagnosed: "Past history of disseminated intravascular coagulation with secondary residual myelopathy probably secondary to vascular insult; right knee pain probably secondary to abnormal walking on the right knee; past history of ovarian cancer,

-3-

operated." (R. 145). MRI of the thoracic spine showed a small volume incidental disc herniation but was otherwise unremarkable (R. 143). X-ray examination of the knee was negative (R. 146), and Plaintiff was referred for orthopedic evaluation of her right knee complaints. Dr. Traviesa reassured Plaintiff on return visit that she did not have a progressive disorder, but that progressive joint dysfunction may occur because of imbalance (R. 140).

On subsequent orthopedic examination, there was some atrophy of the right thigh, but normal range of motion and no ligamentous instability (R. 141). Her orthopedist assessed right knee weakness, status post lumbar plexopathy, and prescribed a hinged knee brace to gain some subjective improvement in the stability of the right knee, and help with Plaintiff's "mild discomfort." (R. 142). On October 22, 2002 return visit, Plaintiff reported that the brace had helped significantly, but wearing it all the time resulted in some ankle discomfort (R. 139). Examination was unchanged, with no gross instability, continued weakness with 3/5 hip flexion and knee extension, and normal range of motion. Assessment was "resolved right knee instability with new-onset right ankle pain in face of lumbar plexopathy." *Id.* It was felt that the ankle pain may just be due to a change in the mechanics of her gait, and an ankle sleeve and heel lift were placed in order to see if this would correct the problem.

On February 18, 2003, Plaintiff presented to her gynecologist for a routine examination (R. 137). The examination was benign, with Plaintiff "doing well." *Id.* She reported no particular symptoms, noting only that she was using Celebrex for "some other aches and pains."

The remainder of the medical records reflect treatment notes well past the pertinent time period and are discussed (only to the extent relevant) further herein.

Plaintiff appeared and testified at her hearing, with respect to her pain and limitations. A Vocational Expert also testified. The ALJ determined that, with respect to the time period at issue, Plaintiff had the severe impairment of status post removal of a Stage II ovarian tumor in 1993 without recurrence, but with residual weakness and numbness of the right leg (R. 25). The ALJ further determined that Plaintiff's impairment did not meet or medically equal the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1 (R. 26), and found that Plaintiff retained the residual functional capacity ("RFC") to perform light work[1] with additional limitations such as only occasional climbing of stairs, balancing, kneeling, crouching, and crawling; no climbing of ladders, ropes, or scaffolds; no work at unprotected heights; and no frequent operation of foot controls with the right lower extremity (R. 27). Based on a review of the evidence, the ALJ determined that Plaintiff retained a sufficient RFC to perform her past relevant work as a teller and was therefore not disabled during the time period at issue (R. 28-29).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

---

[1] "Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds . . . a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff contends that there was not substantial evidence to support the ALJ's determination of an RFC for light work in that: 1) the ALJ did not properly evaluate the opinion of the treating physician; and 2) the ALJ's evaluation of Plaintiff's credibility was flawed. The Court finds no error.

**Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding

an inability to work if it is unsupported by objective medical evidence or is wholly conclusory. *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Plaintiff contends that the ALJ improperly rejected the opinion of the treating neurologist in favor of the two non-examining physicians. The evidence indicates that on June 9, 2003, well after the date last insured, Plaintiff presented to her neurologist, who noted that he had last seen her in October 2002 (R. 131). At this visit, she presented with new problems of low back pain and weakness in her hands, which her doctor noted were not evident in the past. After recounting her history, Dr. Traviesa opined that, "as time went on, the patient improved but has been left with a significant disability, mainly related to weakness of the right leg and numbness of both legs. She has had instability of the right knee because of the weakness, such as she has to wear a heavy knee brace,

-7-

which is helpful." (R. 131). Noting that her social security benefits were being reviewed by the Social Security Administration, he stated that although her cancer had not returned:

> [t]he disabling problem was also her neurological complications, which are fixed and permanent. The fact that she has not had evidence of recurrence of ovarian cancer does not mean that her neurologic problems have normalized. There is no reason to indicate that her neurological problems will get better at this point. Therefore, I am stating, from a neurologic point of view and from knowing this patient from the beginning, that is December of 1993, that she has neurological impairment related to disseminated intravascular coagulation secondary to ovarian cancer, which is totally completely disabling. (R. 131).

He went on to note mild but persistent weakness of the right lower extremity, particularly in the quadriceps, decreased sensation in the entire right leg and also in the sacral dermatomes on the left, and her gait was impaired secondary to right leg weakness and numbness in both legs (R. 131). In a letter to the Social Security Administration, dated October 8, 2003, Dr. Traviesa reiterated the above, and his conclusion that Plaintiff "is disabled because of the neurologic problems which are fixed and permanent. . ." (R. 130).

In this case, the ALJ gave no significant weight to Dr. Traviesa's opinion that Plaintiff's condition was disabling, noting that 1) the physician did not indicate any specific limitations with respect to any work-related functioning; 2) the opinion was conclusory and the objective examination findings did not support the conclusions; 3) the opinion was inconsistent with other findings of record; and 4) the opinion of whether a claimant is disabled is reserved for the Commissioner (R. 27). This determination is supported by substantial evidence.

The opinion is conclusory in that it contains no specific limitations at to any work-related functioning, such as walking, lifting, standing or sitting. While the treatment note indicates a gait impairment, it does not include any specific functional limitation with respect to walking, but only indicates that the impairment is "mild" and the knee brace is helpful. As noted by the ALJ, Dr.

Traviesa's own treatment notes confirm only mild symptomatology, a conclusion bolstered by the absence of *any* treatment for the problem during the entire pertinent time period. Objective examinations including MRI's and x-rays conducted shortly after the date last insured were benign, and while Plaintiff did have mild clumsiness and weakness in her leg, she had normal range of motion, without objective instability, on examination. Plaintiff's knee pain was assessed as "resolved" with her knee brace, and even prior to the brace she was able to carry another child to term and take care of her children without any reported incidents of decompensation due to neurologic difficulties. The opinion is inconsistent with these objective findings and evidence of record. Moreover, as pointed out by the Commissioner, the regulations differentiate between physician opinions concerning the claimant's physical and mental restrictions, which the Commissioner will consider, 20 C.F.R. § 404.1527(a)(2)&(b), and a physician's statements such as "a claimant is disabled" or "unable to work," which are not medical opinions, but opinions on issues reserved to the Commissioner, 20 C.F.R. § 404.1527(e). A physician's opinion on an issue reserved to the Commissioner is not entitled to any special significance. 20 C.F.R. § 404.1527(e)(3). The ALJ's determination to give the opinion no significant weight is supported by substantial evidence and is therefore not disturbed.[2]

Plaintiff next contends that it was error to give weight to non-examining physicians over the treating provider, and notes that the two state agency consultants gave differing opinions. The Court is not persuaded that this is reversible error. In support of her contention, Plaintiff cites case law

---

[2]Plaintiff attempts to bolster the doctor's opinion by citing to treatment records which either pre-date or postdate the period at issue by several years. These records are of no moment, however, as there is no evidence that they reflect Plaintiff's condition on the date last insured. To the extent Plaintiff relies on earlier records, she is barred by the prior decision from contending that they evidence disability from their date. To the extent she relies on post-dated evidence, as noted above, the treating neurologist stated that Plaintiff's condition was not progressive, and specifically noted her back pain and arm weakness were "new."

holding that the reports of non-examining physicians "when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone to not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F2d 278, 280 (11th Cir. 1987). *See also Spencer on Behalf of Spencer v Heckler*, 765 F2d 1090 (11th Cir. 1985) (the opinions of "nonexamining physicians do not constitute substantial evidence on which to base an administrative decision.") Here, however, the ALJ did not merely rely only on the opinions of the consultative physicians. As indicated above, he made a specific finding that the opinions were supported by and consistent with the medical evidence of record, which he set forth in detail in his opinion. *See Ogranaja v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 848, 850- 851 (11th Cir. 2006) (substantial evidence supported ALJ's decision to assign great weight to the opinions of non-examining state agency physicians that were contrary to the opinions of a treating physician, when the ALJ properly discounted the treating physician's opinions and the opinions of the state agency physicians were well supported and consistent with the record as a whole). There is no error evident.

Plaintiff correctly notes that the two non-examining opinions were different, but the ALJ credited both. Keith R. Holden, M.D., reviewed Plaintiff's medical records on September 29, 2003, and concluded that she could perform light work with occasional lifting and carrying up to 20 pounds and at least 2 hours of walking and standing in an 8-hour day (R. 123-29). David Z. Kitay, M.D., reviewed Plaintiff's medical records on December 3, 2003, and concluded that Plaintiff could perform light work with about 6 hours of walking and standing in an 8-hour day (R. 205-11). While Plaintiff objects to the failure of the ALJ to "deal with the discrepancy," any such failure is harmless. Both physicians found Plaintiff to be capable of light work, and it is clear in the formulation of the RFC

that the ALJ had adopted the specific restrictions of the latter review of Dr. Kitay.[3] The objections are without merit.[4]

**Credibility**

Plaintiff's final assertion is that the ALJ erred in finding her to be not entirely credible when the record reveals that she suffers from impairments causing significant limitations and pain. Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

---

[3] Moreover, as pointed out by the Commissioner, the testimony of the Vocational Expert established that a hypothetical person who was limited to only sedentary work could perform other specific jobs that exist in significant numbers in the economy (R. 265-66). Thus, even if the more restrictive opinion was credited, the ALJ's ultimate conclusion is still supported by substantial evidence.

[4] Likewise, the Court is not persuaded that the ALJ had an obligation to contact Dr. Traviesa pursuant to SSR-96-5p, which directs the Commissioner to make every reasonable effort to recontact a treating source for clarification "if the evidence does not support a treating source's opinion . . .and the adjudicator cannot ascertain the basis of the opinion from the case record. . ." Here, there is no need for additional information and nothing to clarify. The ALJ was in possession of all of the medical records for the pertinent time period and the information in those records was adequate to determine that Plaintiff was not disabled. The ALJ needed no assistance to "ascertain the basis of the opinion," he simply disagreed with it, based on the only treatment notes that existed during the pertinent time. There is no duty to recontact under these circumstances. *See Couch v. Astrue,* 267 Fed. Appx. 853, 2008 WL 540178 (11th Cir. 2008) (ALJ was not required, in social security disability benefits case, to recontact claimant's treating physician after deciding that his opinion lacked support; there was substantial evidence that claimant was not disabled, and it appeared that ALJ was already in possession of all of the physician's medical records and that those records were adequate to establish that claimant was not disabled.).

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Here, the ALJ applied the pain standard and determined that Plaintiff had a severe impairment, residual neurological dysfunction, which reasonably could be expected to produce the symptoms alleged, but found that the claimant's statements as to the frequency, intensity and duration of her symptoms for the period at issue were inconsistent with the evidence and could not be fully credited (R. 26). The ALJ noted that "the objective medical evidence does not confirm the severity of the alleged pain and weakness, nor does the weight of the medical and non-medical evidence demonstrate the presence of an impairment which reasonably could be expected to produce pain and functional limitations to the degree alleged by the claimant. . ." (R. 26). Substantial evidence supports this conclusion. The ALJ noted Plaintiff's dramatic improvement, lack of any positive objective studies, lack of any significant prescription pain medications, and the absence of any medical treatment for this condition for seven years – from June 1995 to September 2002 (R. 26-27).

Plaintiff nonetheless contends that this conclusion is "wrong" in that "the objective evidence does demonstrate an impairment which reasonably could be expected to produce the symptoms of pain and weakness that [Plaintiff] testified to." (Brief at 18). In support, however, Plaintiff cites to a 1994 EMG finding (R. 170) and other records that substantially pre-date the time period (R. 171-174). At most, these records show that at some earlier point in time not relevant to the instant application, Plaintiff's impairment was more severe. This is not inconsistent with the ALJ's finding that Plaintiff dramatically improved and, during the time period at issue, was not under a disability.

The ALJ properly applied the pain standard, and the credibility determination is supported by substantial evidence.

A final note is in order. Nothing herein is meant to imply that Plaintiff does not have a permanent condition that affects her life, to some extent. At issue, however, is whether or not Plaintiff's condition was disabling, within the meaning of the Social Security Act and the Commissioner's regulations. The law defines disability as the inability to do *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § § 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § § 404.1505-404.1511. The plaintiff bears the burden of proving that she is unable to perform her past relevant work due to this impairment. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, while there is evidence of an impairment that is permanent, it was Plaintiff's burden to establish that it is also severe enough to qualify as a disability under this standard. The ALJ's determination that Plaintiff did not

carry that burden here was made in accordance with proper legal standards and is amply supported by substantial evidence and, thus, must be affirmed.

## *CONCLUSION*

The administrative determination of the Commissioner is **AFFIRMED.** The Clerk is directed to enter judgment accordingly and close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 10, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record